UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JENNIFER S.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____

24-CV-334-LJV
DECISION & ORDER

On April 12, 2024, the plaintiff, Jennifer S. ("Jennifer"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2]  *Id.*  On July 10, 2024, Jennifer moved for judgment on the pleadings, Docket Item 7, and on August 9, 2024, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 9.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Jennifer applied for Disability Insurance Benefits ("DIB").  One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).

For the reasons that follow, this Court denies Jennifer's motion and grants the Commissioner's cross motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

I.    **THE ALJ'S DECISION**

On June 29, 2023, the ALJ found that Jennifer had not been under a disability from August 5, 2021, through the date of the decision. *See* Docket Item 5 at 32. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.* at 24–25.

At step one, the ALJ found that Jennifer had not engaged in substantial gainful activity since August 5, 2021, her alleged onset date. *Id.* at 25. At step two, the ALJ found that Jennifer suffered from three severe, medically determinable impairments: "degenerative disc disease of the cervical and lumbar spine with radiculopathy, obesity, and meniscus tear." *Id.*

At step three, the ALJ found that Jennifer's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 26. More specifically, the ALJ found that Jennifer's impairments did not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) or 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina). *Id.*

The ALJ then found that Jennifer had the residual functional capacity ("RFC")[4] to "perform sedentary work as defined in 20 C.F.R. § 404.1567(a)" except that:

> [Jennifer] can occasionally climb stairs and ramps, balance, stoop, kneel[,] and crouch; can never climb ropes, ladders[,] or scaffolds, crawl, or work around hazards; [Jennifer] needs to alternate sitting and standing every 30 minutes with no more than 5% of the time off task; and can perform simple[,] routine tasks and make simple work[-]related decisions.

*Id.*

At step four, the ALJ found that Jennifer no longer could perform any past relevant work. *Id.* at 30. But given Jennifer's age, education, and RFC, the ALJ found at step five that Jennifer could perform substantial gainful activity as a lens inserter, ink printer, or order clerk. *Id.* at 31; *see Dictionary of Occupational Titles* 713.687-026, 1991 WL 679273 (Jan. 1, 2016); *id.* at 652.685-038, 1991 WL 685750 (Jan. 1, 2016); *id.* at 209.567-014, 1991 WL 671794 (Jan. 1, 2016). The ALJ therefore found that Jennifer had not been under a disability from August 5, 2021, through June 29, 2023, the date of the decision. *See* Docket Item 5 at 32.

## II.    ALLEGATIONS

Jennifer argues that the ALJ erred in three ways. *See* Docket Item 7-1 at 8–17. First, Jennifer argues that the ALJ improperly evaluated the opinion of a treating physician, David Hallasey-Roberts, M.D. *Id.* at 8–11. Second, Jennifer argues that the ALJ's highly specific RFC finding—that she "needs to alternate sitting and standing

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

4

every 30 minutes with no more than 5% of the time off task"—was not supported by substantial evidence. *Id.* at 11–14. Finally, Jennifer argues that the vocational expert's step-five testimony was not supported by well accepted methodology. *Id.* at 14–17. For the reasons that follow, this Court disagrees.

### III.  ANALYSIS

#### A.  Dr. Hallasey-Roberts's Opinion

For claims filed on or after March 27, 2017, such as Jennifer's, an ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [a claimant's] medical sources." *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 7 (W.D.N.Y. 2022) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)) (internal quotation marks omitted). Instead, an ALJ evaluates the opinion evidence and articulates "how persuasive she finds the medical opinions in the case record." *Id.*

The regulations require an ALJ to consider five factors when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency, purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "tend to support or contradict" the opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The ALJ must "explain how [she] considered the supportability and consistency factors" because they are "the most important factors," and she "may, but [is] not required to, explain how [she] considered the [remaining] factors." *Id.* § 404.1520c(b)(2).

5

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinions or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion or prior administrative finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative finding will be." *Id.* § 404.1520c(c)(2). Put differently, supportability addresses how well the source explains and provides evidence for his or her opinion, and consistency addresses whether the opinion fits with the rest of the medical record. *See Spottswood v. Kijakazi*, 2024 WL 89635, at *1 (2d Cir. Jan. 9, 2024).

On January 5, 2023, Dr. Hallasey-Roberts completed a physical impairment questionnaire for Jennifer. Docket Item 5 at 480–484. Dr. Hallasey-Roberts opined that Jennifer could sit for up to fifteen minutes at a time and for a maximum of one hour in an eight-hour workday and stand for up to fifteen minutes at a time and for a maximum of one hour in an eight-hour workday. *Id.* at 481. And Dr. Hallasey-Roberts concluded that Jennifer's symptoms would frequently to constantly interfere with her attention and concentration and that she would likely be absent from work three days each month. *Id.* at 480.

The ALJ found Dr. Hallasey-Roberts's opinion "not persuasive." *Id.* at 30. In doing so, the ALJ explicitly addressed the opinion's supportability, noting that "[d]espite the treating relationship, the limitations identified are not supported by the treatment notes or by the longitudinal treatment history." *Id.* And the ALJ explained that contrary

6

to Dr. Hallasey-Roberts's opined limitations, "[e]xaminations show normal gait as well as full strength and normal sensation in the lower extremities," and Jennifer "previously admitted greater abilities and the evidence does not show any significant change in her condition." *Id.*

But that marked the extent of the ALJ's discussion. *See id.* The ALJ did not explicitly discuss the consistency of Dr. Hallasey-Roberts's opinion with the remainder of the record. *See id.* And her failure to do so was procedural error. *Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022).

The Court's inquiry does not end there, however. An ALJ's procedural error is harmless if "a searching review of the record assures [the Court] that the substance of the [regulation] was not traversed." *Id.* (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)) (internal quotation marks omitted). In other words, the Court may affirm the ALJ's decision if "the record provides 'good reasons' for assigning 'little weight' to" Dr. Hallasey-Roberts's opinion. *See Estrella*, 925 F.3d at 95 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2014)). And the record here does just that.

To begin, Dr. Hallasey-Roberts's opinion was inconsistent with the other opinion evidence in the record. For example, the ALJ evaluated the December 6, 2021, opinion of Hongbiao Liu, M.D., Docket Item 5 at 30, which found that Jennifer had only "mild to moderate limitation[s] for prolonged walking, bending, kneeling, . . . sitting[,] and standing, *id.* at 419. The ALJ similarly considered the opinions of J. Lawrence, M.D., and Gregory Zito, M.D., both state agency medical consultants. *Id.* at 30. They concluded that Jennifer could sit, stand, or walk for six hours in an eight-hour workday, and that she had no postural or manipulative limitations whatsoever. *Id.* at 98–100,

7

112–14.  The ALJ found that Jennifer was more limited than Dr. Liu and the state consultants found but less limited than Dr. Hallasey-Roberts found.  *See id.* at 26, 30.  And it was within the purview of the ALJ to do just that.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.").

Dr. Hallasey-Roberts's opinion also was inconsistent with Jennifer's reported activities of daily living.  The ALJ noted that Jennifer cares for her personal needs independently, does light housework and prepares meals, cleans several times per week, and shops for up to two hours at a time twice per week.  Docket Item 5 at 27.  Surely, that entails standing for more than the fifteen minutes at a time and the hour each day to which Jennifer was limited by Dr. Hallasey-Roberts.  *See id.* at 481.  And while Jennifer correctly argues that an ALJ should not discount a medical opinion based solely on a claimant's activities of daily living, s*ee* Docket Item 7-1 at 10–11 (citing *Claudio-Montanez v. Kijakazi*, 2022 WL 17819123, at *6 (2d Cir. Dec. 20, 2022), the ALJ did not do that here.  Instead, he based his opinion on all the evidence in the record, including the other opinion evidence noted above.

Finally, as noted above, the ALJ discussed Dr. Hallasey-Roberts's own treatment notes, concluding that they did not support Dr. Hallasey-Roberts's opinion.  *See* Docket Item 5 at 29–30.  Of course, as Jennifer argues, Docket Item 7-1 at 9, a conclusory statement that an opinion is not supported is inadequate to support an ALJ's determination, *see Drake v. Saul*, 839 F. App'x 584, 586 (2d Cir. 2020) (summary order).  But when an ALJ's reasoning can be gleaned from the record, additional discussion is not required.  *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.

1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). In other words, while the ALJ might have discussed each treatment note and record supporting or not supporting Dr. Hallasey-Roberts's opinion in more detail, she was not required to do so. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("[A]n ALJ is not required to discuss every piece of evidence submitted. An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." (internal quotation marks and citation omitted)). And after reviewing Dr. Hallasey-Roberts's opinions in light of his medical records, the Court concludes that the ALJ did not err when she found the supportability factor to be lacking.

In sum, a searching review of the record convinces this Court that the ALJ had "good reasons" for discounting Dr. Hallasey-Roberts's opinion—namely that the opinion was inconsistent with and unsupported by the medical evidence. *See Matta*, 508 F. App'x at 56; *Balsamo v. Chater*, 242 F.3d 75, 81 (2d Cir. 1998) ("[A]n [ALJ] is free to . . . choose between properly submitted medical opinions"). And while the ALJ failed to explicitly discuss the consistency factor as required, her failure to do so was harmless error. *See Loucks*, 2022 WL 2189293, at *2. Accordingly, Jennifer's first argument lacks merit.

### B. Highly Specific RFC Findings

If an ALJ includes a "highly[ ]specific" limitation in a claimant's RFC, that limitation cannot come from whole cloth. *See Tomicki v. Berryhill*, 2018 WL 703118, at

9

*5 (W.D.N.Y. Jan. 11, 2018).  In other words, when a medical provider opines about a specific limitation, an ALJ cannot arrive at some lesser specific limitation unless that lesser limitation finds support in the medical record.  See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998).  So when the medical evidence suggests a specific sit/stand limitation and there is no medical evidence suggesting a different sit/stand limitation, a finding that a claimant requires some lesser limitation is not supported by substantial evidence.  See Tomicki, 2018 WL 703118, at *5 ("[T]he record does not support the ALJ's conclusion that [the claimant] needs to briefly switch between sitting and standing only every thirty minutes.  The ALJ did not cite any evidence to support this highly[ ]specific sit-stand option . . . Moreover, there is evidence in the record indicating that [the claimant] needs to change positions every few minutes, not every thirty minutes.").

But just because an RFC includes a specific limitation with a percentage, range, or other descriptor does not mean that the limitation is unsupported by substantial evidence.  See Johnson v. Colvin, 669 F. App'x 44, 47 (2d Cir. 2016) ("The fact that the ALJ assigned a particular percentage range (0-10%) to illustrate [a claimant's] limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence.").  The question is whether there was evidence in the record supporting the specific finding—here, for example, that Jennifer would need to "alternate sitting and standing every 30 minutes with no more than 5% of the time off task."[5]  Docket Item 5 at

---

[5] The Court agrees with the Commissioner that this involves only a single limitation—a sit/stand limitation.  See Docket Item 9-1 at 14.  At the April 20, 2023, hearing, the ALJ explained the limitation to the vocational expert, noting that Jennifer "would need a sit/stand option that would allow [her] to alternate between sitting and standing every 30 minutes, so long as it did not create more than 5 percent of off task time."  Docket Item 5 at 67.

26. And a specific finding often is supported by "[a] medical opinion, a claimant's testimony, or information contained in the medical records." *Michelle D. v. Comm'r of Soc. Sec.*, 2024 WL 108685, at *5 (W.D.N.Y. Jan. 10, 2024).

As discussed above, Dr. Hallasey-Roberts opined that Jennifer could sit for up to fifteen minutes at a time and for a maximum of one hour in an eight-hour workday and stand for up to fifteen minutes at a time and for a maximum of one hour in an eight-hour workday. Docket Item 5 at 481. And if that were the only opinion in the record discussing Jennifer's sit/stand limitation, then the ALJ's less-restrictive sit/stand limitation necessarily would have come from whole cloth. *See Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014). But the record here included the opinions of at least three other physicians—each of whom found Jennifer to be less limited than Dr. Hallasey-Roberts opined. *See* Docket Item 5 at 98–100, 112–14, 416–19.

For example, Dr. Liu found that Jennifer had only "mild to moderate limitation[s] for prolonged walking . . . sitting[,] and standing." Docket Item 5 at 419. Dr. Lawrence and Dr. Zito found Jennifer to be even less limited than that, concluding that Jennifer could sit, stand, or walk for six hours in an eight-hour workday and that she had no postural limitations whatsoever. *Id.* at 99–100, 112–114. The ALJ found those opinions "not fully persuasive" because Jennifer was more limited than Dr. Liu, Dr. Lawrence, and Dr. Zito opined. *Id.* at 30. And the ALJ chose a sit/stand limitation somewhere between Dr. Hallasey-Roberts's opinion and the opinions of the other physicians—in fact, quite close to the fifteen minutes in Dr. Hallasey-Roberts's opinion. *Id.* at 26. That was not error. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (finding an ALJ's deviation "from consultative examiners' recommendations to *decrease*

11

[a claimant's] RFC based on other evidence in the record" was not error (emphasis in original)); *Shauna N.B. v. Comm'r of Soc. Sec.*, 2025 WL 961466, at *5 (W.D.N.Y. Mar. 31, 2025) ("[T]he ALJ's decision to impose more severe limitations . . . is not a basis for remand.").

In sum, it was permissible for the ALJ to choose a less restrictive sit/stand limitation than that about which Dr. Hallasey-Roberts opined. And because Dr. Lawrence and Dr. Zito found that Jennifer would have no postural limitations whatsoever, the ALJ was free to choose something between Dr. Hallasey-Roberts's opined limitation and no limitation at all. Thus, in contrast to cases where a specific limitation was based on an ALJ's own surmise or fashioned from whole cloth, *see, e.g.*, *Tara W. v. Comm'r of Soc. Sec.*, 2021 WL 4316824, at *3–4 (W.D.N.Y. Sep. 23, 2021), the ALJ's limitation here was supported by the record. Jennifer's second argument therefore lacks merit as well.

### C. Vocational Expert's Testimony

At step five, the Commissioner considers a claimant's RFC, age, education, and work experience "to see if [a claimant] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). In doing so, the Commissioner bears the burden of showing that, given those factors, there are a significant numbers of jobs in the national economy that a claimant can perform. *See id.*; *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004). To make that showing, an ALJ may either "apply[] the Medical Vocational Guidelines" or "adduc[e] the testimony of a vocational expert." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

Here, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Jennifer] can perform." Docket Item 5 at 31. And the ALJ relied on the testimony of a vocational expert to make that finding. *Id.*

At the hearing on April 20, 2023, the vocational expert testified that, based on the RFC provided to him, Jennifer could perform work as a lens inserter, ink printer, or order clerk, which he estimated to have 20,000, 16,000, and 13,000 jobs available in the national economy, respectively. *Id.* at 68. When asked by Jennifer's counsel how he determined those job numbers, the vocational expert explained that they were based on his own research; his discussions with other vocational experts; and information from the SOC, OccuBrowse Plus, the U.S. Census Bureau, the Department of Labor Statistics, and employment surveys. *Id.* at 70.

Jennifer argues that the vocational expert's explanation of the methods he used to ascertain those numbers was "suspect." Docket Item 7-1 at 14. But the Second Circuit "does not require a detailed scrutiny of a vocational expert's methods." *See, e.g.*, *Pamela M.H. v. Comm'r of Soc. Sec.*, 2024 WL 1131043, at *2 (N.D.N.Y. Mar. 15, 2024) (internal quotation marks and citation omitted). Rather, a vocational expert's methodology is reviewed under a substantial evidence standard. *See Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). And the threshold to meet that standard "is not high." *Id.* at 103. The vocational expert's testimony here clears that low bar.

While Jennifer may be correct that the vocational expert did "not actually explain how he came to the specific numbers that he did," Docket Item 7-1 at 16, he was not required to "identify with great specificity the source of his figures or to provide supporting documentation," *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 450 (2d

13

Cir. 2012) (quoting *Galiotti v. Astrue*, 266 F. App'x 66, 68 (2d Cir. 2008)). To be sure, the vocational expert's testimony would not amount to substantial evidence if it were "conjured out of whole cloth." *Id.* (quoting *Donahue v. Barnhart*, 427 F.3d 441, 446 (7th Cir. 2002)). But the vocational expert "identified the sources he generally consulted to determine such figures," and explained generally how those sources were used. *Id.* Because that was all that was required of him, the ALJ was entitled to rely on his testimony, and the ALJ's step five finding was supported by substantial evidence. *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 407 (D. Conn. 2012), *aff'd*, 515 F. App'x 32 (2d Cir. 2013) ("The [vocational expert] utilized reliable statistical sources as well as personal knowledge and experience to develop the occupational projections provided . . . this Court cannot say that the ALJ erred in accepting the [vocational expert's] testimony as reliable, as there was a sufficient basis for the ALJ to so find.").

What is more, Jennifer was represented by counsel at the hearing, and counsel did not raise the issue before the ALJ. At the hearing, counsel explicitly asked the vocational expert to explain his methodology, and after the vocational expert's explanation did not object to that methodology. Docket Item 5 at 69–71. In fact, counsel did not object to the vocational expert's methodology at any time prior to the ALJ's decision. Counsel could have asked for the vocational expert's underlying data, *see Biestek*, 587 U.S. at 107; counsel could have argued at the hearing that the vocational expert's testimony should not be credited, *id.*; or counsel could have submitted "briefing questioning the [vocational expert's] 'flawed' process," *Brault*, 683 F.3d at 451. But counsel did not do any of that.

In sum, the vocational expert's testimony met the low bar that the Supreme Court has found applies to such testimony. *See Biestek*, 587 U.S. at 102–03. And even if it did not, Jennifer's failure to raise the issue prior to the ALJ's decision would tip the balance. Jennifer's final argument therefore lacks merit as well.

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Jennifer's motion for judgment on the pleadings, Docket Item 7, is DENIED, and the Commissioner's cross motion for judgment on the pleadings, Docket Item 9, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:  January 14, 2026
        Buffalo, New York

                                     /s/ Lawrence J. Vilardo
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE